[No. A057162. First Dist., Div. Three. Dec. 30, 1992.]

CARPENTERS HEALTH AND WELFARE TRUST FUND FOR
CALIFORNIA et al., Plaintiffs and Appellants, v.
DEVELOPERS INSURANCE COMPANY et al., Defendants and
Respondents.

**COUNSEL**

Van Bourg, Weinberg, Roger & Rosenfeld, Victor J. Van Bourg, Michael B. Roger, Robert M. Hirsch, Blythe Michelson, M. Catherine Jones and Susan A. Dovi for Plaintiffs and Appellants.

Littler, Mendelson, Fastiff & Tichy, Karen E. Ford and Gregory R. Meyer for Defendants and Respondent.

**OPINION**

**MERRILL, J.**—In *Carpenters So. Cal. Admin. Corp.* v. *El Capitan Development Co.* (1991) 53 Cal.3d 1041 [282 Cal.Rptr. 277, 811 P.2d 296] (cert.

den. Nov. 12, 1991, __ U.S. __ [116 L.Ed.2d 450, 112 S.Ct. 430]), our Supreme Court held that Civil Code section 3111[1], which creates liens on real property in favor of trust funds established pursuant to collective bargaining agreements, is preempted by the Employee Retirement Income Security Act of 1974 (ERISA). (29 U.S.C. § 1001 et seq.) The question before us is whether the same thing is true relative to stop notice statutes, as pertains to these same trust funds. (§ 3156 et seq. & § 3179 et seq.[2]) We hold that it is.

I

The named plaintiffs in this suit are: Carpenters Health and Welfare Trust Fund for California, Carpenters Vacation and Holiday Fund for Northern California, Carpenters Apprenticeship and Training Trust Fund for Northern California, and Carpenters Annuity Trust Fund for Northern California (Carpenters' Trust Funds). These are multi-employer trust funds established under collective bargaining agreements and employee pension benefit plans or employee welfare benefit plans within the meaning of ERISA. (See 29 U.S.C. § 1002(1), (2)(A), & (21)(A).) These trust funds are funded through employer contributions for covered employees. In this case, the covered employees are members of unions affiliated with the United Brotherhood of Carpenters and Joiners of America (Union).

In September 1988, The Housing Group—Northern California (Housing Group), as owner of certain real property in Danville, executed plans to develop its property into a residential subdivision known as the "Hidden Hills Development." It contracted with Jack Raley Construction, Inc. (Raley Construction), to do the rough carpentry work and framing for the 43-unit development. Raley Construction performed this work between September 1988 and September 1989 using employees covered by the Carpenters' Trust Funds.

In their complaint, plaintiffs allege that prior to its involvement in the development, Raley Construction entered into a collective bargaining agreement with the Union which incorporates "the Carpenters' Master Agreement for Northern California and the various trust agreements establishing each of

---

[1]Civil Code section 3111 provides: "For the purposes of this chapter, an express trust fund established pursuant to a collective bargaining agreement to which payments are required to be made on account of fringe benefits supplemental to a wage agreement for the benefit of a claimant on particular real property shall have a lien on such property in the amount of the supplemental fringe benefit payments owing to it pursuant to the collective bargaining agreement."

All further statutory references are to the Civil Code unless otherwise indicated.

[2]The stop notice procedures outlined in section 3156 et seq. apply to private works while those outlined in section 3179 et seq. apply to public works.

Plaintiffs' trusts. By these agreements [Raley Construction] promised that it would pay to the Carpenters' Trust Funds fringe benefit contribution[s] at [specified] rates . . . for each hour of covered carpentry work . . . ." However, according to the complaint, during the months of June, July, August and September 1989, the company failed to make the agreed contributions. As a consequence, plaintiffs allege that Raley Construction owes the Carpenters' Trust Funds $82,154.67 plus interest.

To secure their claim, plaintiffs, on October 16, 1989, recorded mechanics' liens with the county recorder's office against certain lots in the Hidden Hills Development, pursuant to section 3111. Thereafter, in order to release the real property from these liens, the Housing Group obtained a release bond from defendant Developers Insurance Company (Developers). Developers assumed the role of a surety by way of the transaction. The release bond was recorded with the county on or about November 30, 1989. Then on April 18, 1990, plaintiffs filed a complaint for enforcement of the mechanics' liens release bond against Developers. Developers answered the complaint. Additionally, Developers and the Housing Group filed a cross-complaint against Raley Construction for indemnity and alleged breach of contract.[3]

Plaintiffs took additional action as well. On October 27, 1989, plaintiffs served Central Bank, the construction lender on the Hidden Hills Development, with a bonded stop notice, pursuant to section 3159.[4] The notice required Central Bank to withhold sufficient money from the construction loan to cover plaintiffs' claim. On or about April 11, 1990, the Housing Group secured a release of the stop notice bond from Developers. The effect of the release was to prevent plaintiffs from enforcing the stop notice and to substitute the bond as a basis for payment of all unpaid fringe benefit contributions. In response, plaintiffs, on June 4, 1990, filed a complaint against Developers for enforcement of the stop notice release bond.

---

[3]Based on the cross-complaint and Raley Construction's answer to the cross-complaint, it appears that Raley Construction did not complete the work on the Hidden Hills project but ceased participation in the project sometime around September 1989 and, thereafter, filed chapter 11 bankruptcy proceedings.

[4]Section 3159 provides in pertinent part: "Any of the persons named in Sections 3110, 3111, and 3112 may, prior to the expiration of the period within which his or her claim of lien must be recorded under Chapter 2 . . . , give to a construction lender a stop notice or a bonded stop notice. If a payment bond has previously been recorded in the office of the county recorder where the site is located in accordance with Section 3235 or in accordance with Section 3162, then the construction lender shall withhold funds pursuant to a bonded stop notice filed by an original contractor and may, at its option, withhold funds pursuant to a stop notice or bonded stop notice given by anyone other than an original contractor. The construction lender may elect not to withhold pursuant to a bonded stop notice by reason of a payment bond having previously been recorded in the office of the county recorder of the county where the site is located in accordance with Section 3235."

Subsequently, both complaints filed by plaintiffs were consolidated and stayed pending the Supreme Court's decision in *Carpenters So. Cal. Admin. Corp.* v. *El Capitan Development Co.*, *supra*, 53 Cal.3d 1041, pursuant to the parties' stipulation. Part of that stipulation states: "The undersigned parties further agree that the issue presented in the *El Capitan Development* Case is dispositive of the question of ERISA preemption of the lien and/or stop notice in this action." The *El Capitan* decision was handed down in June 1990. Based on that decision and the parties' stipulation, Developers filed a motion for judgment on the pleadings. Following a hearing, the trial court granted the motion as to both the stop notice claims and the mechanics' lien claims. Plaintiffs appeal only from that portion of the judgment pertaining to the stop notice claims.

## II

In *El Capitan*, *supra*, Carpenters Southern California Administrative Corporation (CSCAC), the administrator of various multi-employer trust funds established under collective bargaining agreements (including the Carpenters' Trust Funds), brought suit to foreclose certain mechanics' liens it had filed against certain real property owned by the El Capitan Development Company (El Capitan). The liens were filed pursuant to section 3111. El Capitan was in the process of building a condominium project on the property. The general contractor of the project had subcontracted with Pacific Southwest Framing (Pacific) to do part of the framing work. In its complaint, CSCAC alleged that Pacific and John Hall Enterprises were one and the same entity and that the latter company was delinquent in making fringe benefit contributions to CSCAC pursuant to a collective bargaining agreement. El Capitan demurred to CSCAC's complaint, arguing that ERISA preempted section 3111. The trial court granted the demurrer with leave to amend. When CSCAC declined to amend the complaint, the trial court entered a judgment of dismissal. The Court of Appeal concluded that ERISA preempted section 3111 and affirmed the judgment of dismissal. The Supreme Court affirmed the Court of Appeal decision.

In reaching its decision, the *El Capitan* court looked initially at ERISA's broad preemption provision which expressly covers " 'any and all state laws insofar as they may now or hereafter *relate to* any employee benefit plan . . . .' [Citation.]" (*Carpenters So. Cal. Admin. Corp.* v. *El Capitan Development Co.*, *supra*, 53 Cal.3d at p. 1047.) Noting that the term "relate to" had been broadly interpreted by the United States Supreme Court, it said, "Most recently, in [*Ingersoll-Rand Co.* v. *McClendon* (1990) 498 U.S. 133 [112 L.Ed.2d 474, 111 S.Ct. 478], [that] court explained that '[ ] Congress used

those words in their broad sense, rejecting more limited pre-emption language that would have made the clause "applicable only to state laws relating to the specific subjects covered by ERISA." ' [Citation.] This is consistent with the court's previous instruction in [*Pilot Life Ins. Co.* v. *Dedeaux* (1987) 481 U.S. 41 (95 L.Ed.2d 39, 107 S.Ct. 1549)] that ' "a state law 'relate[s] to' a benefit plan, 'in the normal sense of the phrase, *if it has a connection with or reference to such a plan.*' " ' [Citation.] . . . [¶] In determining whether section 3111 'relates to' a benefit plan, we take note that the United States Supreme Court has on several occasions stated that 'state laws which make "reference to" ERISA plans are laws that "relate to". those plans within the meaning of § 514(a) [of ERISA].' [Citations.] Indeed, the court has 'virtually taken it for granted that state laws which are "specifically designed to affect employee benefit plans" are pre-empted . . . .' [Citation.]" (*Carpenters So. Cal. Admin. Corp.* v. *El Capitan Development Co., supra*, 53 Cal.3d at pp. 1048-1049, italics added.)

Focusing directly on section 3111, the *El Capitan* court found that the statute is specifically designed to affect employee benefit plans. It said, "The section expressly refers to 'trust fund[s] established pursuant to a collective bargaining agreement' and provides to such funds a mechanic's lien remedy not provided by Congress. Thus, [it] singles out ERISA plans for special treatment." (*Carpenters So. Cal. Admin. Corp.* v. *El Capitan Development Co., supra*, 53 Cal.3d at p. 1049.) The court further reasoned, "ERISA plans do not furnish labor or materials for construction projects. Accordingly, to treat them as persons who do furnish labor or materials is to single them out for special treatment. Because section 3111 singles out ERISA plans for special treatment and is, in fact, designed to affect them specifically, we conclude the statute 'relates to' ERISA plans." (*Ibid*, fns. omitted.)

The *El Capitan* court rejected any notion that the preemption question turns on a finding that the law at issue actually regulates an ERISA plan. Nevertheless, it noted that when it *can* be said that a state law regulates the terms and conditions of an ERISA plan, this necessarily includes a finding that the law "relates to" the plan as well. It said it found that section 3111 regulates ERISA plans by creating a funding mechanism not provided by Congress [i.e., a lien against real property]. "Hence, the fact that section 3111 regulates ERISA plans provides further support for the conclusion that section 3111 'relates to' ERISA plans and is preempted." (53 Cal.3d at p. 1051.)

"In essence, section 3111 creates a new state cause of action for the collection of contributions owed to benefit plans and makes an additional entity liable for such contributions. . . . [¶] [However,] ERISA preempts

new state-law causes of action for the collection of contributions because, consistent with its goal of providing 'appropriate sanctions and ready access to federal courts' [citation], ERISA itself provides the remedies for the collection of contributions." (53 Cal.3d at p. 1052.)[5]

Finally, differentiating section 3111 from a Georgia general garnishment statute which the United States Supreme Court held was not federally preempted in *Mackey* v. *Lanier Collections Agency & Serv.* (1988) 486 U.S. 825 [100 L.Ed.2d 836, 108 S.Ct. 2182], the *El Capitan* court said, "*Mackey*'s analysis of Georgia's general garnishment procedures does not save section 3111 from preemption. The decision concerned a third party action for enforcement of judgments against beneficiaries of an ERISA plan. ERISA does not contain remedial provisions for such actions. Largely for this reason, the United States Supreme Court concluded that 'state-law methods for collecting money judgments must, as a general matter, remain undisturbed by ERISA; otherwise, there would be no way to enforce such a judgment won against an ERISA plan.' [Citation.] The present case is not similar because ERISA expressly provides remedies for recovery of delinquent contributions to employee benefit plans." (53 Cal.3d at p. 1055.)

"California's trust fund lien statute does more than provide a new enforcement mechanism for collecting judgments; it creates new substantive rights. [Citation.] Section 3111 permits the creditor (the trust fund) to enforce a debt (for outstanding fringe benefit contributions) not against the debtor (the defaulting employer), but against the property of a third party that is not a party to the collective bargaining agreement. Section 3111 gives a trust fund a right to a lien against the property of third parties, such as El Capitan, that the fund would not, and does not, have under ERISA. In the absence of section 3111, El Capitan would have no liability to the funds for the fringe benefit contributions. Therefore, section 3111 cannot be upheld under *Mackey* as it creates a new substantive right against the property of a third party that is not created by ERISA and, thus, goes beyond being a mere means of enforcing a judgment. [Citation.]" (*Carpenters So. Cal. Admin. Corp.* v. *El Capitan Development Co., supra,* 53 Cal.3d at p. 1055.)[6]

### III

■ In the same way the mechanic's lien procedure outlined in *El Capitan* was found to be preempted by ERISA, the stop notice procedure at

---

[5]Under section 502(a) of ERISA (29 U.S.C. § 1132(a)), a participant, beneficiary or fiduciary can bring a civil action against a delinquent contributor.

[6]Subsequent to the *El Capitan* decision, the United States Court of Appeals, Ninth Circuit, also found that section 3111 is preempted by ERISA. (*Sturgis* v. *Herman Miller, Inc.* (9th Cir. 1991) 943 F.2d 1127.)

issue in the instant case is preempted as well. By their terms, the stop notice provisions (§ 3156 et seq. & § 3179 et seq.) incorporate section 3111 by reference, thereby making express reference to the entities covered by section 3111—i.e., "trust fund[s] established pursuant to a collective bargaining agreement." As was found in the case of section 3111, this part of the stop notice provisions "relates to" ERISA plans by virtue of the fact that it is specifically designed to affect them. It provides such funds a stop notice remedy not provided by Congress, thus singling out ERISA plans for special treatment.

Section 3159 states, "Any of the persons named in Sections 3110, 3111, and 3112 may . . . give to a construction lender a stop notice or a bonded stop notice." As so defined, "persons" eligible to file a stop notice or a bonded stop notice are "[m]echanics, materialmen, contractors, subcontractors, lessors of equipment, artisans, architects, registered engineers, licensed land surveyors, machinists, builders, teamsters, and draymen, and all persons and laborers of every class performing labor upon . . . on, or furnishing materials or leasing equipment to be used or consumed in or furnishing appliances, teams, or power contributing to a work of improvement . . . ." (§ 3110); or section 3111 trust funds; or "[a]ny claimant who, at the instance or request of the owner . . . of any lot or tract of land, has made any site improvement . . . ." (§ 3112). This is the same category of entities eligible to file mechanics' liens under section 3109 et seq. As was noted in *El Capitan* in relation to the latter provisions, "ERISA plans do not furnish labor or materials for construction projects. Accordingly, to treat them as persons who do furnish labor or materials is to single them out for special treatment." (*Carpenters So. Cal. Admin. Corp.* v. *El Capitan Development Co.*, *supra*, 53 Cal.3d at p. 1049, fn. omitted.)

Because the stop notice statutes single out ERISA plans for special treatment and are, in fact, designed to affect them specifically, we conclude that they "relate to" these plans and are preempted. (53 Cal.3d at p. 1049.)

Moreover, while not a prerequisite to a preemption finding, the stop notice procedure, like the lien procedure, regulates ERISA plans by creating a funding mechanism not provided by Congress (i.e., a hold on construction loan moneys). It creates a new state cause of action for the collection of contributions owed to benefit plans and makes an additional entity liable for such contributions.

Plaintiffs here attempt to distinguish the stop notice provisions from the lien provisions. They argue that the stop notice procedure does not create

any additional funding mechanism or any new substantive rights but merely mandates that the construction lender set aside funds it would normally pay the contractor until the dispute is settled. We find appellants' argument unpersuasive.

As pertains to section 3111 trust funds, the stop notice procedure functions similarly to the lien procedure. It permits the creditor (the trust fund) to enforce a debt (for outstanding fringe benefit contributions) not against the debtor (the defaulting employer), but against the property of a third party that is not a party to the collective bargaining agreement. The only difference is that whereas the lien procedure involves liens, the stop notice procedure involves stop notices. Both, however, operate as encumbrances on property——one encumbering real property, the other encumbering construction loan money. Both give the trust fund a right to an encumbrance against the property of third parties that the fund would not, and does not, have under ERISA.[7] In the absence of the stop notice procedure, neither the Housing Group nor Developers would have any liability to the Carpenters' Trust Funds for the fringe benefit contributions.

Judgment is affirmed.[8]

White, P. J., and Werdegar, J., concurred.

Appellants' petition for review by the Supreme Court was denied March 25, 1993. Mosk, J., was of the opinion that the petition should be granted.

---

[7]Here, the third party was originally the Housing Group as the named debtor on the construction loan from Central Bank. However, this position was assumed by Developers as the surety.

[8]Developers also contends that plaintiffs cannot prevail on appeal because the parties stipulated that the *El Capitan* decision would be determinative of the ERISA preemption issue in respect to mechanics' liens and stop notices. Plaintiffs respond that the stipulation does not preclude the appeal as the Supreme Court in *El Capitan* did not reach the preemption question as to stop notices. In view of our decision on the merits, we find it unnecessary to determine the effect of the stipulation.