25 F.3d 849
 62 USLW 2768, 18 Employee Benefits Cas. 1838
 CARPENTERS HEALTH AND WELFARE TRUST FUND FOR CALIFORNIA;
Carpenters Pension Trust Fund for Northern California;
Carpenters Vacation and Holiday Trust Fund for Northern
California; Carpenters Apprenticeship and Training Trust
Fund for Northern California; Carpenters Annuity Trust Fund
for Northern California, Plaintiffs-Appellants,
v.
TRI CAPITAL CORP., Mark Diversified, Defendants-Appellees.
 No. 92-15112.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 16, 1993.
Decided June 3, 1994.
 
 Christian L. Raisner, Van Bourg, Weinberg, Roger & Rosenfeld, San Francisco, CA, for plaintiffs-appellants.
 James M. Nelson, Diepenbrock, Wulff, Plant & Hannegan, Sacramento, CA, for defendants-appellees.
 Appeal from the United States District Court for the Eastern District of California.
 Before FERGUSON, CANBY and BRUNETTI, Circuit Judges.
 Opinion by Judge BRUNETTI; Dissent by Judge FERGUSON.
 BRUNETTI, Circuit Judge:
 
 
 1
 Appellants, ERISA benefit plans for members of the carpenters' union, are owed money by a subcontractor for work performed on a building improvement project. They brought suit in state court against the construction lender for the project to recover the money under California's "bonded stop notice" remedy. The construction lender and the general contractor on the project, both of which are appellees, removed to federal court and moved to dismiss for failure to state a claim. After the motion was granted, appellants filed a first amended complaint alleging additional federal and state law claims. Appellees again moved to dismiss for failure to state a claim, and the district court again granted the motion. Appellants appeal the dismissal, and we affirm.
 
 I. Facts and Proceedings Below
 
 2
 Appellants (hereafter referred to as the "Trust Funds") are five multiemployer employee benefit plans under the Employee Retirement Income Security Act of 1974 ("ERISA"), as defined in 29 U.S.C. Sec. 1002(37). In May 1972, Rodney Stark, doing business as Stark Construction, entered into a collective bargaining agreement with the United Brotherhood of Carpenters and Joiners of America. The agreement provided that Stark would pay to the Trust Funds fringe benefit contribution at specified rates for each hour of covered carpentry work used by him. In July and August 1989, Stark employed carpenters to perform improvements on a private property in Stockton, California known as O'Connor Woods. Stark had been engaged by Mark Diversified, Inc. ("Mark"), the general contractor on the project. The carpenters expended 8,416 hours of covered carpentry work, generating $66,107.68 in fringe benefit contributions. However, Stark failed to pay this amount.
 
 
 3
 The Trust Funds wanted their money. Stark, however, had filed for Chapter 7 bankruptcy protection. Therefore, the Trust Funds went after Mark and Tri Capital Corporation ("Tri Capital"), the construction lender on the project. The Trust Funds first served a "bonded stop notice" on Tri Capital, pursuant to Cal.Civ.Code Sec. 3159. Under California law, upon receipt of such notice Tri Capital was obliged to withhold from the sums due to Stark enough money to satisfy the Trust Funds' claims. Cal.Civ.Code Sec. 3162 (West Supp.1993). Tri Capital refused to comply.
 
 
 4
 The Trust Funds then brought an action in California state court against Tri Capital and Doe Defendants 1-80 to enforce the stop notice, pursuant to Cal.Civ.Code Sec. 3172. Tri Capital and Mark, which had concluded that it must be one of the Doe Defendants, removed the action to the federal district court. Tri Capital and Mark argued that the California stop notice remedy was preempted by ERISA and by the National Labor Relations Act. The Trust Funds moved to remand to state court and defendants moved to dismiss on the ground of ERISA preemption. On April 19, 1991, the district court denied the Trust Funds' motion and granted appellees' motion to dismiss, with 30 days to amend.
 
 
 5
 The Trust Funds then filed an amended complaint on May 17, 1991. Their first claim, enforcement of the stop notice under California law, is identical to the cause of action pleaded in the original complaint. Their second and third claims allege that they are third-party beneficiaries to an agreement between Mark and Stark whereby Mark agreed to pay the fringe benefits by "joint check." The second claim is based on remedies for breach of fiduciary duty provided by ERISA and by the Labor Management Relations Act ("LMRA"); the third claim is based on a California state law providing for actions by a third-party beneficiary to enforce a contract made explicitly for its benefit. All three claims seek recovery of the same $66,107.68 that Stark allegedly failed to pay to the Trust Funds.
 
 
 6
 Appellees again filed a Fed.R.Civ.P. 12(b)(6) motion to dismiss the amended complaint for failure to state a claim. On January 6, 1992, the district court entered a final order granting their motion and dismissing the complaint without leave to amend. The Trust Funds appeal from this judgment and also appeal the district court's assertion of federal jurisdiction upon removal of the original complaint. Both parties seek attorneys' fees on appeal.
 
 II. Standard of Review
 
 7
 We review de novo a district court's Fed.R.Civ.P. 12(b)(6) dismissal for failure to state a claim. Kruso v. International Tel. & Tel.Corp., 872 F.2d 1416, 1421 (9th Cir.1989), cert. denied, 496 U.S. 937, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990). A complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Love v. United States, 915 F.2d 1242, 1245 (9th Cir.1989) (quotation omitted).
 
 III. State Law Stop Notice Claim
 
 8
 A. Federal subject matter jurisdiction.
 
 
 9
 On appeal, the Trust Funds renew their contention that the district court erred in denying their motion to remand. "Where a motion to remand is denied, the propriety of removal is reviewable [ (i) ] on appeal from the final judgment or [ (ii) ] by interlocutory appeal if the refusal to remand is certified." Sheeran v. General Elec. Co., 593 F.2d 93, 97 (9th Cir.), cert. denied, 444 U.S. 868, 100 S.Ct. 143, 62 L.Ed.2d 93 (1979). However, the Trust Funds took neither of these courses of action; instead, they amended their complaint to include claims based on federal law and refiled in federal district court.
 
 We have held that:
 
 10
 when there is no appeal of a denial of a remand motion and the case is tried on the merits, the issue on appeal is whether the federal court would have had jurisdiction had the case been filed in federal court in the posture it had at the time of the entry of the final judgment.
 
 
 11
 Lewis v. Time, Inc., 710 F.2d 549, 552 (9th Cir.1983). Because a Rule 12(b)(6) dismissal is a judgment on the merits, Federated Dept. Stores, Inc. v. Moitie, 452 U.S. 394, 399 n. 3, 101 S.Ct. 2424, 2428 n. 3, 69 L.Ed.2d 103 (1981), we must determine whether the district court would have had jurisdiction given the posture of the case at the time the judgment was entered. At that time, the Trust Funds' second cause of action alleged breach of the collective bargaining agreement and sought redress under ERISA Sec. 502(a)(2). Federal district courts have exclusive jurisdiction over such actions. 29 U.S.C. Sec. 1132(e)(1) (1988); Pension Trust Fund v. Triple A Mach. Shop, Inc., 942 F.2d 1457, 1461 (9th Cir.1991). Therefore, the district court at a minimum could have asserted jurisdiction over the stop notice cause of action as a pendent state claim, because the two claims "derive from a common nucleus of operative fact." United Mine Workers v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966); see 28 U.S.C. Sec. 1367(a) (Supp. IV 1991) (supplemental jurisdiction). We hold that the district court had jurisdiction over the Trust Funds' first amended complaint.
 
 
 12
 B. ERISA preemption.
 
 
 13
 The district court held that the Trust Funds' state law stop notice claim "relate[d] to" an employee benefit plan and that therefore ERISA completely preempted the claim. The district court dismissed the claim on Rule 12(b)(6) grounds in both the original complaint and the first amended complaint.
 
 
 14
 We agree with the district court that the California stop notice remedy is preempted by ERISA. ERISA's preemption clause provides that
 
 
 15
 Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.
 
 
 16
 29 U.S.C. Sec. 1144(a) (1988) (emphasis added).[1] The Supreme Court has recognized that ERISA preemption is "conspicuous for its breadth" and that its "deliberately expansive language was designed to establish pension plan regulation as exclusively a federal concern." Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 138, 111 S.Ct. 478, 482, 112 L.Ed.2d 474 (1990) (quotations omitted). "ERISA Sec. 514(a) pre-empts 'any and all State laws insofar as they may now or hereafter relate to any employee benefit plan' covered by the statute." Mackey v. Lanier Collection Agency & Serv., Inc., 486 U.S. 825, 829, 108 S.Ct. 2182, 2185, 100 L.Ed.2d 836 (1988) (quoting 29 U.S.C. Sec. 1144(a)) (emphasis added).
 
 
 17
 Although we have never decided the precise question of whether the California stop notice remedy is preempted by ERISA,[2] we have read the ERISA preemption clause very broadly. Our most recent decision addressing the issue is Trustees of the Elec. Workers Health & Welfare Trust v. Marjo Corp., 988 F.2d 865 (9th Cir.1993). In Marjo, the trustees of various ERISA employee benefit plans were owed money by an electrical subcontractor that had filed for Chapter 11 bankruptcy protection. Id. at 866. The trustees sought to obtain the unpaid trust fund contributions from two general contractors who had used the subcontractor, pursuant to a Nevada statute making general contractors liable for any "indebtedness for labor" incurred by any of its subcontractors.[3] Id. at 866 n. 1. The general contractors removed the actions to federal court and moved for summary judgment. The district court granted summary judgment on the ground that the Nevada statute was preempted by ERISA. Id. at 866.
 
 
 18
 We affirmed the grant of summary judgment. Id. at 867. We first noted that the Supreme Court had held that a state law could be preempted by ERISA even if it was not "specifically designed to affect employee benefit plans." Id., citing Ingersoll-Rand, 498 U.S. at 139, 111 S.Ct. at 483 ("a state law may 'relate to' a benefit plan, and thereby be pre-empted, even if the law is not specifically designed to affect such plans, or the effect is only indirect."). We then held that the claim was preempted because "[t]he Trustees are attempting to use the Nevada statute to enforce the terms of a plan. To the extent that the enforcement mechanism of the Nevada statute supplements those provided by ERISA, it is preempted." Id.[4]
 
 
 19
 As in Marjo, the Trust Funds here are attempting to use the California stop notice remedy to enforce the terms of a plan. Furthermore, like the Nevada statute, the California statute supplements a remedy already provided by ERISA: civil suits under 29 U.S.C. Sec. 1132(a)(3) to enforce plans' rights to contributions under 29 U.S.C. Sec. 1145. Therefore, under the reasoning of Marjo, the California stop notice remedy is preempted by ERISA.[5]
 
 
 20
 IV. Third-Party Beneficiary Claim Under California Law
 
 
 21
 Article 16.4 of the subcontract between Mark and Stark provided that "[l]abor benefits will be paid under a joint check agreement between [Mark, Stark] & the appropriate agency." [ER at 69]. The Trust Funds' complaint asserts a claim under Cal.Civ.Code Sec. 1559[6] seeking to enforce the rights of the Trust Funds as third-party beneficiaries to the subcontract between Mark and Stark. The district court held that this claim was preempted by ERISA.
 
 
 22
 We agree with the district court. As in Marjo, the Trust Funds are attempting to use the California third-party beneficiary statute to enforce the terms of a plan, and the statute merely supplements the ERISA remedy noted above. Therefore, the state third-party beneficiary remedy is preempted by ERISA.
 
 
 23
 The Trust Funds' strongest argument to the contrary is that the statute is identical in nature to the general Georgia garnishment statute that the Supreme Court held in Mackey was not preempted by ERISA. In Mackey, a collection agency sought to garnish the vacation and holiday plan benefits of plan members against whom it had obtained money judgments. The trustees of the benefit plan argued that a Georgia statute specifically prohibiting the garnishment of ERISA-covered employee benefit plans barred the collection agency from doing so. The Supreme Court first held that the antigarnishment statute was preempted by ERISA because of the statute's "express reference" to ERISA plans. Mackey, 486 U.S. at 830, 108 S.Ct. at 2186.
 
 
 24
 The Court then rejected the trustees' argument that the Georgia general garnishment statute was also preempted by ERISA. The Court reasoned that ERISA clearly contemplated the enforcement of money judgments against benefit plans but that it did not provide an enforcement mechanism; consequently, "state-law methods for collecting money judgments must, as a general matter, remain undisturbed by ERISA; otherwise, there would be no way to enforce such a judgment won against an ERISA plan." Id. at 834, 108 S.Ct. at 2187-88. The Court also noted that, under Georgia law,
 
 
 25
 garnishment is a "procedural" mechanism for the enforcement of judgments. Georgia's statute that provides for garnishment creates no substantive causes of action, no new bases for relief, or any grounds for recovery; the Georgia garnishment law does not create the rule of decision in any case affixing liability. Rather under Georgia law, postjudgment garnishment is nothing more than a method to collect judgments otherwise obtained by prevailing on a claim against the garnishee.
 
 
 26
 Id. at 834-35 n. 10, 108 S.Ct. at 2187-88 n. 10 (emphasis added; citation omitted).
 
 
 27
 Neither of these two anti-preemption rationales applies here. As noted above, ERISA already provides a mechanism for trust funds to collect unpaid benefits. Furthermore, the California third-party beneficiary statute is not simply a "procedural" mechanism for the enforcement of judgments; it creates a separate substantive cause of action that a trust fund may bring to obtain such a judgment in the first place. For this reason, the California third-party beneficiary statute "cannot be brought under the authority of Mackey." Iron Workers Mid-South Pension Fund v. Terotechnology Corp., 891 F.2d 548, 556 (5th Cir.), cert. denied, 497 U.S. 1024, 110 S.Ct. 3272, 111 L.Ed.2d 782 (1990).
 
 V. Claims Under ERISA and LMRA
 
 28
 The Trust Funds' complaint also asserts a claim under ERISA Sec. 502(a)(2) and (3), which provides for civil suits by plan beneficiaries to redress violations of the terms of a plan. 29 U.S.C. Sec. 1132(a)(2) and (3) (1988). The Trust Funds assert as an alternative basis for the claim LMRA Sec. 301, which establishes federal jurisdiction for "[s]uits for violation of contracts between an employer and a labor organization." 29 U.S.C. Sec. 185(a) (1988).
 
 
 29
 A. ERISA bases for the claim.
 
 
 30
 1. Employer obligation to make contributions.
 
 
 31
 The Trust Funds first allege that Mark violated ERISA Sec. 515, which provides that
 
 
 32
 [e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.
 
 
 33
 29 U.S.C. Sec. 1145 (1988) (emphasis added). ERISA defines an "employer" as "any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan." 29 U.S.C. Sec. 1002(5) (1988). The Trust Funds contended that by agreeing to the joint check provision, Mark was acting "indirectly in the interest of an employer" because it was in the interest of Stark, the direct "employer," for Mark to enter into the subcontract agreeing to make the benefit payments. The district court rejected this argument and dismissed the claim on the ground that Mark was not an "employer" and thus not subject to the obligations of Sec. 515.
 
 
 34
 Our circuit has never addressed the precise question of whether a nonsignatory to a collective bargaining agreement who agrees in another contract to pay by joint check the benefit contribution obligations of the signatory is a Sec. 1002(5) "employer."[7] The district court relied on two of our opinions holding that nonsignatories whose obligations to trust funds are fixed solely by state law cannot be sued as Sec. 515 "employers." In Carpenters S. Cal. Admin. Corp. v. D & L Camp Constr. Co., 738 F.2d 999 (9th Cir.1984), we held that a surety company, which held a defaulting contractor's license bond and was therefore required under California state law to protect those damaged by the actions of the contractor, was not an "employer" under ERISA. Id. at 1000. We stated that
 
 
 35
 Neither the legislative history of ERISA ... nor of its 1980 amendments ... indicate that Congress meant to expand the concept of employer or the jurisdiction of the federal courts to include sureties, whose obligations are fixed by contract and regulated by state law for the protection of the public.
 
 
 36
 The surety that provides a bond pursuant to the California contractor licensing statute is not acting for the benefit of the employer; it is acting for the benefit of those who have been damaged by the employer's failure to pay. [ ...] The protection is aimed at a broad class of entities that deal with contractors, not, as plaintiff would have us believe, primarily as protection of employee benefit plans. Any obligation of the surety to this plaintiff is founded in state, not federal law.
 
 
 37
 Id. at 1000-01 (citations omitted).
 
 
 38
 We followed this reasoning in Carpenters S.Cal. Admin. Corp. v. Majestic Housing, 743 F.2d 1341 (9th Cir.1984), which involved a suit by employee benefit trust funds to enforce a mechanic's lien they had filed against a housing developer. The developer had hired a subcontractor who had failed to make certain fringe benefit contributions due under the terms of a collective bargaining agreement the subcontractor had signed with the union. We held that the developer was not a proper defendant under ERISA Sec. 515 because, like the surety in D & L Camp, it was "a non-party to the bargaining agreement that is made responsible by the operation of state [mechanic's lien] law for the failed obligations of the employer." Id. at 1346.[8]
 
 
 39
 Mark's posture is analogous to that of the surety in D & L Camp and the developer in Majestic Housing. Mark is not a signatory to the collective bargaining agreement, but only to the contract between Mark and Stark. Any responsibility that Mark may have for Stark's obligations--and it is not clear that it bears any such responsibility[9]--therefore derives from state third-party beneficiary law, not the plan or the collective bargaining agreement. Mark and Stark may well have intended the joint check arrangement to benefit the Trust Funds, although it appears that the arrangement was primarily intended to benefit Mark;[10] but no matter how strong that intent and no matter how strong a state law case the Trust Funds may have against Mark but for federal preemption, the claim asserts a state right of action, not a right under ERISA Sec. 515.
 
 
 40
 2. Fiduciary status.
 
 
 41
 The Trust Funds next contend that Mark is an ERISA fiduciary and that Mark breached its fiduciary duty by not making the fringe benefit contributions. The district court dismissed the claim on the ground that the Trust Funds had not alleged that Mark possessed any of the indicia of an ERISA fiduciary.
 
 
 42
 Under ERISA,
 
 
 43
 a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.
 
 
 44
 29 U.S.C. Sec. 1002(21)(A) (1988). As the district court noted, the Trust Funds "have not alleged that [Mark] did any of these things or assumed any of these obligations." [ER at 94]. The Trust Funds argue that "[f]acts not before this Court on this appeal of dismissal may well show that Mark assumed and breached a fiduciary duty with respect to the contributions." [Blue Brief at 26.] However, this argument is irrelevant, because in reviewing a Rule 12(b)(6) dismissal this court is limited to the facts pleaded in the complaint. Love, 915 F.2d at 1245. In any event, the Trust Funds give no indication of what these "facts" might be.
 
 
 45
 3. Party in interest.
 
 
 46
 The Trust Funds also contend that in addition to being an ERISA "employer," Mark is an ERISA "party in interest" to an employee benefit plan. ERISA defines such a "party in interest" as:
 
 
 47
 (A) any fiduciary, ... counsel, or employee of such employee benefit plan;
 
 
 48
 (B) a person providing services to such plan;
 
 
 49
 (C) an employer any of whose employees are covered by such plan;
 
 
 50
 (D) an employee organization any of whose members are covered by such plan;
 
 
 51
 (E) a [50% or more owner of the voting power, capital interest, or beneficial interest of any] employer or ... employee organization described in subparagraph (C) or (D);
 
 
 52
 (F) a relative of [any of the above parties in interest];
 
 
 53
 (G) a corporation [controlled by any of the above parties in interest];
 
 
 54
 (H) an employee, officer, director ... or a 10 percent or more shareholder, directly or indirectly, of [any of the above parties in interest];
 
 
 55
 (I) a 10 percent or more ... partner or joint venturer of [any of the above parties in interest].
 
 
 56
 29 U.S.C. Sec. 1002(14) (1988). We held above that Mark is not a "fiduciary" or an "employer," and the Trust Funds have not alleged that Mark falls into any of the other categories. Mark is therefore not an ERISA "party in interest."
 
 
 57
 4. ERISA conclusion.
 
 
 58
 The Trust Funds' complaint fails to show that Mark is an ERISA employer, fiduciary, or party in interest. Therefore, under no set of facts pleaded in the complaint can the Trust Funds show that Mark owes them the contributions under some ERISA-based duty. We affirm the district court's Rule 12(b)(6) dismissal of the ERISA third-party beneficiary claim.
 
 
 59
 B. LMRA basis for action.
 
 
 60
 The Trust Funds' complaint also asserts LMRA Sec. 301 as a federal jurisdictional basis for their second claim. The district court relied on a Sixth Circuit case, Metropolitan Detroit Bricklayers Dist. Council v. J.E. Hoetger & Co., 672 F.2d 580 (6th Cir.1982), to hold that a prime contractor (such as Mark) may not be held liable under Sec. 301 for benefits under a collective bargaining agreement between a subcontractor (such as Stark) and a union (the carpenters). However, the Sixth Circuit in Hoetger expressly left open an issue similar to the question facing us:
 
 
 61
 If [the contractor] had obligated itself in its contract with [the subcontractor] to escrow amounts due as fringe benefits and had failed to do so ... [the union and its trust funds] would have had a claim against [the contractor] as third-party beneficiaries, though not necessarily under Sec. 301(a).
 
 
 62
 Id. at 585 n. 8 (emphasis added). Therefore, we may not rely on Hoetger.
 
 
 63
 Section 301(a) of the LMRA provides in relevant part that
 
 
 64
 [s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ... may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.
 
 
 65
 29 U.S.C. Sec. 185(a) (1989). The Trust Funds' first amended complaint alleges that the subcontract between Mark and Stark contains a provision stating that "[l]abor benefits will be paid under a joint check agreement between [Mark, Stark] and the appropriate agency." [ER at 69 (emphasis added) ].[11] The Trust Funds' complaint then alleges that
 
 
 66
 [i]t was understood by MARK, STARK and by the Plaintiffs that payment of required fringe benefit contributions to Plaintiffs were to be made via joint check, naming as Payees both the Carpenters Trust Funds and Stark Construction.
 
 
 67
 24. MARK knew weekly the number of carpentry hours for which benefit contributions were due because STARK submitted weekly certified payroll records to MARK. On October 12, 1989, Plaintiffs, who are third-party beneficiaries to the subcontract, notified MARK of the benefit contributions due and requested payment. To date, Defendant MARK has failed and refused to pay to Plaintiffs any amounts in fringe benefit contributions or issue the joint checks pursuant to [the subcontract].
 
 
 68
 25. An actual controversy has arisen and now exists between Plaintiffs and defendant MARK and Plaintiffs desire a judicial determination and declaration of Plaintiffs' rights under the subcontract and an injunction requiring defendant MARK to issue a joint check to Plaintiffs and Stark and to deliver it to Plaintiffs and enjoining MARK from its failure and refusal to make the payments as required by the Subcontract.
 
 
 69
 [ER at 34-35 (emphasis added) ].
 
 We have held that
 
 70
 [a]ll that is required for jurisdiction to be proper under Sec. 301(a) is that the suit be based on an alleged breach of contract between an employer and a labor organization and that the resolution of the lawsuit be focused upon and governed by the terms of the contract.
 
 
 71
 Painting & Decorating Contractors Ass'n v. Painters & Decorators Joint Comm., Inc., 707 F.2d 1067, 1071 (9th Cir.1983), cert. denied, 466 U.S. 927, 104 S.Ct. 1709, 80 L.Ed.2d 182 (1984) (emphasis added). The "contract" at issue need not be a collective bargaining agreement, but only "an agreement between [an] employer[ ] and [a] labor organization[ ] significant to the maintenance of labor peace between them." Retail Clerks Int'l Ass'n v. Lion Dry Goods, Inc., 369 U.S. 17, 28, 82 S.Ct. 541, 548, 7 L.Ed.2d 503 (1962). See Hotel Employees v. Marriott Corp., 961 F.2d 1464, 1466 n. 3 (9th Cir.1992) (letter agreement between Marriott and union, designed to end union opposition to Marriott's involvement in the construction of a large hotel and to guide employment of the hotel staff, is such an agreement); General Teamsters v. Mitchell Bros. Truck Lines, 682 F.2d 763, 765-66 (9th Cir.1982) (strike settlement agreement between union and trucking company is such an agreement).[12]
 
 
 72
 No facts have been alleged to establish that the alleged "understanding" constitutes a valid and enforceable contract.[13] In any event, we need not decide whether such an understanding could form the basis for Sec. 301 jurisdiction as an agreement between a labor organization and an employer, even though it is not a collective bargaining agreement. The Trust Funds do not allege that Mark breached this "understanding" or any other agreement between Mark and the Trust Funds contemplated by the subcontract. Rather, the Trust Funds alleges that Mark breached the subcontract itself. Because the subcontract is not a "contract between an employer and a labor organization," the complaint does not allege facts sufficient to provide Sec. 301 jurisdiction.
 
 VI. Attorneys' Fees
 
 73
 Appellees request an award of attorneys' fees. We may award such fees under Fed.R.App.Proc. 38 if we determine that an appeal is "frivolous." An appeal is frivolous when the result is obvious or the appellant's arguments of error are wholly without merit. McConnell v. Critchlow, 661 F.2d 116, 118 (9th Cir.1981). The Trust Funds' appeal was not frivolous; the Trust Funds have made colorable arguments that the district court erred in holding that Mark was not an "employer" and that the state law claims are not preempted by ERISA.[14] We decline to award appellees attorneys' fees under Fed.R.App.P. 38.
 
 
 74
 Appellees assert 29 U.S.C. Sec. 1132(g)(1)[15] as an alternative basis for an award of attorneys' fees. However, appellees raise this request for the first time on appeal, and we generally will not consider an issue raised for the first time on appeal. United States v. Mondello, 927 F.2d 1463, 1468 (9th Cir.1991). Furthermore, the issue does not qualify for the exception we make for purely legal issues, because deciding it would require the development of a factual record. See Hummell v. S.E. Rykoff & Co., 634 F.2d 446, 453 (9th Cir.1980) (remanding to district court for determination of, inter alia, the degree of the opposing parties' bad faith and the ability of the opposing parties to satisfy an award of fees). We therefore decline to consider the request.
 
 VII. Conclusion
 
 75
 Because ERISA preempts both state law claims asserted by the Trust Funds, and because the Trust Funds cannot state a third-party beneficiary claim against either of the appellees under ERISA or the LMRA, we affirm the district court's dismissal of the action.
 
 
 76
 AFFIRMED.
 
 FERGUSON, Circuit Judge, dissenting in part:
 
 77
 I dissent from Part V.A. of the majority opinion. Section 515 of ERISA, 29 U.S.C. Sec. 1145, was adopted expressly for the purpose of simplifying collection actions by plan trustees against delinquent employers. See Laborers Health and Welfare Trust Fund for Northern California v. Advanced Lightweight Concrete Co., Inc., 484 U.S. 539, 545-49, 108 S.Ct. 830, 834-35, 98 L.Ed.2d 936 (1988); see also Southern California Retail Clerks Union v. Bjorklund, 728 F.2d 1262, 1265 (9th Cir.1984). The majority defeats that purpose when it excludes from Section 515 liability those, such as Mark, who enter into express, written agreements to pay into employee trust funds.
 
 
 78
 The first mistake that the majority makes is to collapse the ERISA definition of employer with its analysis of who is obligated to pay into a multiemployer plan under Section 515. These discussions should proceed separately in order to give each section its intended meaning. See, e.g., Massachusetts Laborers' Health and Welfare Fund v. Starrett Paving Corp., 845 F.2d 23, 24-26 (1st Cir.1988).
 
 I. The ERISA Definition of Employer
 
 79
 ERISA defines an employer as "any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan." 29 U.S.C. Sec. 1002(5) (emphasis added). The legislative history of ERISA shows that Congress intended to broaden the common-law definition of employer. See Massachusetts Laborers', 845 F.2d at 24-25; see also Kwatcher v. Massachusetts Service Employees Pension Fund, 879 F.2d 957, 960 (1st Cir.1989) ("That ERISA expands the concept of 'employer' beyond common-law or corporate law notions is not much in doubt."). Indeed, this intent is obvious from the plain language of the statute.
 
 
 80
 Mark, by entering into an express written agreement with Stark to pay the labor benefits of Stark's employees, is unquestionably acting "indirectly in the interests of an employer, in relation to an employee benefit plan." It is incomprehensible that such an explicit undertaking of an employer's responsibility to pay into employee benefit plans could be construed as falling outside of ERISA's broad definition of employer.
 
 
 81
 It is true, as the majority notes, that the Eleventh Circuit has adopted a bright line rule requiring all ERISA employers to be signatories to collective bargaining agreements. See Xaros v. U.S. Fidelity & Guar. Co., 820 F.2d 1176, 1180 (11th Cir.1987); see also Laborers Local 938 Joint Health & Welfare Trust Fund v. B.R. Starnes Co., 827 F.2d 1454, 1457 (11th Cir.1987); Giardello v. Balboa Ins. Co., 837 F.2d 1566 (11th Cir.1988). The Eleventh Circuit's collapsed analysis incorporates a misguided interpretation of section 515 into its interpretation of section 1002(5), and therefore runs afoul of the plain language of section 1002(5). In short, the Eleventh Circuit's rule is incorrect, and we should decline to follow it.
 
 
 82
 The majority also relies on two Ninth Circuit decisions, Carpenter's Southern California Administrative Corporation v. Majestic Housing, 743 F.2d 1341 (9th Cir.1984) and Carpenters Southern California Administrative Corporation v. D & L Camp Construction Company, Inc., 738 F.2d 999 (9th Cir.1984), to support its conclusion that Mark cannot be an employer under ERISA. Assuming arguendo that these cases are still good law, but see Trustees of Electrical Workers Health and Welfare Trust v. Marjo Corp., 988 F.2d 865, 867-68 (9th Cir.1992), they nonetheless do not support the majority's conclusion.
 
 
 83
 In D & L Camp, the issue was whether the surety of an employer was acting "indirectly in the interests of an employer" under section 1002(5). We found that a surety is not acting "for the benefit of the employer; it is acting for the benefit of those who have been damaged by the employer's failure to pay," and therefore concluded that a surety's obligations arise solely under state law, not under ERISA. D & L Camp, 738 F.2d at 1001. The same cannot be said of Mark, which expressly assumed the employer's obligations to pay labor benefits. In entering into this agreement, Mark was not guaranteeing "protection ... [to] a broad class of entities that deal with contractors." Id. Rather Mark was acting "primarily as [a protector of payments to] employee benefit plans." Id. The express agreement between Mark and Stark therefore takes this case out of the ambit of D & L Camp's holding.
 
 
 84
 Majestic Housing is similarly inapposite. In that case, we relied on the reasoning of D & L Camp to reach the narrow conclusion that "a non-signatory property owner whose holdings are subject to a state mechanic's lien was [not] intended as a proper defendant in an [ERISA] action to enforce the employer's obligation." Majestic Housing, 743 F.2d at 1346. We found that the pension funds' cause of action arose solely under a state mechanic's lien law, and therefore even though the state law was enacted to benefit employee trust funds, ERISA was not implicated. Id. Here, Mark expressly assumed the obligation to pay into the employee's benefit funds. The Trust Funds' cause of action thus arises under section 515 of ERISA, as discussed below, and is not solely a function of state law.
 
 
 85
 In sum, there is no Ninth Circuit precedent controlling the determination of whether Mark is an employer as defined by 29 U.S.C. Sec. 1002(5). However, both the plain language and legislative history of ERISA lead to the inevitable conclusion that Mark is such an employer.II. Section 515
 
 
 86
 The majority assumes that, because Mark's express promise to pay labor benefits is contained in a sub-contract with Stark instead of in a collective bargaining agreement, Mark is not obligated under section 515.[1]
 
 
 87
 Section 515 was enacted for the express purpose of facilitating collection actions by plan trustees against employers who fail to make promised contributions. Laborers Health and Welfare Trust Fund for Northern California v. Advanced Lightweight Concrete Co., Inc., 484 U.S. 539, 545-47, 108 S.Ct. 830, 834, 98 L.Ed.2d 936 (1988). A host of problems ensue when employers fail to make promised contributions, including loss of benefits from investment income, additional administrative costs, and increased attorneys fees and other legal costs in connection with collection efforts. Id. at 545-49 n. 14, 108 S.Ct. at 834 n. 14 (citing Senate Committee on Labor and Human Resources, 96th Cong., 2d Sess., S. 1076, The Multiemployer Pension Plan Amendments Act of 1980: Summary and Analysis of Consideration 43 (Comm.Print 1980)). To avoid these problems, section 515 gives pension plans a direct cause of action against delinquent employers, without having to contend with claims and defenses unrelated to the employer's promise and the plans' entitlement to the contributions. Id. at 545-49, n 14, 108 S.Ct. at 835 n. 14.
 
 
 88
 The essential requirement of section 515 is that there be a written agreement to pay into the funds. See Central States, Southeast and Southwest Areas Pension Fund v. Behnke, Inc., 883 F.2d 454, 459 (6th Cir.1989). Whether that promise is contained in a collective bargaining agreement or in a separate contract to pay benefits is immaterial. See Central States, Southeast and Southwest Areas Pension Fund v. Gerber Truck Service, Inc., 870 F.2d 1148, 1153-54 (7th Cir.1989) (en banc) (the agreement to contribute to a pension plan "need not be a formal collective bargaining agreement"); see also Behnke, 883 F.2d at 460 ("Although [the writings obligating the employer] are not collective bargaining agreements, they sufficiently comport with the writing requirement[ ] of ... ERISA"). Here, Stark was obligated to pay into the pension funds pursuant to a collective bargaining agreement. Stark then entered into a written contract with Mark, a provision of which obligated Mark to pay labor benefits. Mark, by virtue of the written agreement with Stark, is obligated to pay into the pension funds. The fact that Mark's obligation arises from a separate, written contract does not exempt Mark from ERISA liability.
 
 
 89
 The majority attempts to cast Mark's obligation to pay as a state law obligation arising out of the Trust Funds status as a third-party beneficiary to the contract between Mark and Stark. It is true that the Trust Funds' cause of action is based on the written agreement between Stark and Mark. However, section 515 of ERISA gives employee pension funds a cause of action "independent of the contract on which the duty to contribute is based and [which] may be enforced by an action brought in federal district court." Bituminous Coal Operators' Association, Inc. v. Connors, 867 F.2d 625, 633 (D.C.Cir.1989). The Trust Funds' status as a third-party beneficiary therefore does not defeat its claim under ERISA. In fact, all actions under section 515 of ERISA are essentially grounded in an employee pension fund's status as a third-party beneficiary. See Benson v. Brower's Moving & Storage, 907 F.2d 310, 313-14 (2d Cir.1990) (section 515 transforms pensions funds from ordinary third-party beneficiaries into parties analogous to holders in due course, not subject to any of the promisee's defenses); see also Gerber Truck Service, 870 F.2d at 1151.
 
 Conclusion
 
 90
 In sum, it is contrary to the plain meaning and expressed intention of the relevant sections of ERISA to conclude that those who promise in writing to pay employee benefits are not subject to ERISA liability. The majority's decision will make it all too easy for employers to contract away their duty to make payments, leaving the pension funds with no recourse under either state or federal law. This result will undermine the ability of pension funds to deliver benefits to workers. ERISA was enacted to eliminate just this type of problem: "In enacting ERISA ... Congress sought to prevent the losses suffered by employees and their families when vested pension benefits were not paid because a pension plan was terminated before sufficient funds had accumulated." Korea Shipping Corp. v. New York Shipping Ass'n, 880 F.2d 1531, 1536 (2nd Cir.1989). Therefore, I must dissent.
 
 
 
 [1]
 The Trust Funds are covered by ERISA because they are "established or maintained ... by [an] employee organization ... representing employees engaged in commerce or in any industry or activity affecting commerce." 29 U.S.C. Sec. 1003(a) (1988)
 
 
 [2]
 In Sturgis v. Herman Miller, 943 F.2d 1127 (9th Cir.1991), we held that the California mechanic's lien, a similar remedy, was preempted. Id. at 1130. Appellees contend that Sturgis directly controls the outcome of this case because the bonded stop notice enforcement provision, Cal.Civ.Code Sec. 3172, "does no more than provide a mechanism through which to enforce a very limited number of mechanic's liens." [Red Brief at 18]. This contention is incorrect. Under California law, a bonded stop notice is an independent mechanism for collecting sums owed to construction workers. Even if a claimant's mechanic's lien is destroyed, the claimant may still attempt to collect his money by giving the construction lender a bonded stop notice. Rossman Mill & Lumber Co. v. Fullerton Sav. & Loan Ass'n, 221 Cal.App.2d 705, 34 Cal.Rptr. 644, 646 (1963). Because the two are independent remedies, Sturgis does not directly control the outcome of this appeal
 
 
 [3]
 The Nevada statute provides that
 Every original contractor making or taking any contract in this state for the erection, construction, alteration or repair of any building or structure, or other work, shall assume and is liable for the indebtedness for labor incurred by any subcontractor acting under, by, or for the original contractor in performing any labor, construction, or other work included in the subject of the original contract ...
 Nev.Rev.Stat. Sec. 608.150(1) (1992).
 
 
 [4]
 This holding is consistent with decisions from other circuits holding that state law claims are preempted if they seek to enforce the terms of an ERISA plan and supplement remedies already provided by ERISA. See Diduck v. Kaszycki & Sons Contractors, Inc., 974 F.2d 270, 288 (2d Cir.1992) (state fraud law claim); 1975 Salaried Retirement Plan v. Nobers, 968 F.2d 401, 406 (3d Cir.1992) (state contract law claim), cert. denied, --- U.S. ----, 113 S.Ct. 1066, 122 L.Ed.2d 370 (1993); Van Camp v. AT & T Info. Sys., 963 F.2d 119, 123 (6th Cir.) (state civil rights law claim), cert. denied, --- U.S. ----, 113 S.Ct. 365, 121 L.Ed.2d 278 (1992); Settles v. Golden Rule Ins. Co., 927 F.2d 505, 509 (10th Cir.1991) (state wrongful death law claim)
 
 
 [5]
 The California courts have also held that the stop notice statute is preempted by ERISA. See Carpenters Health & Welfare Trust Fund v. Developers Ins. Co., 11 Cal.App.4th 1539, 15 Cal.Rptr.2d 85, 90 (1992) review denied, (Mar. 25, 1993), and cert. denied, --- U.S. ----, 114 S.Ct. 91, 126 L.Ed.2d 58 (1993)
 
 
 [6]
 This code section provides that "[a] contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it." Cal.Civ.Code Sec. 1559 (West 1982)
 
 
 [7]
 The Eleventh Circuit has held that to be a Sec. 1002(5) employer, a company must be a party to the collective bargaining agreement calling for the contributions at issue. Laborers Local 938 Joint Health & Welfare Trust Fund v. B.R. Starnes Co., 827 F.2d 1454, 1457 (11th Cir.1987). See also Giardiello v. Balboa Ins. Co., 837 F.2d 1566, 1570 (11th Cir.1988) (affirming the B.R. Starnes holding that signatory status is a prerequisite to qualifying as a Sec. 1002(5) employer.). We decline to adopt such a bright-line rule
 
 
 [8]
 In Marjo, we stated that the "broad language" in subsequent Supreme Court and appellate decisions have "placed the continuing validity of our ... holdings [in D & L Camp and Majestic Housing ] in serious doubt." Marjo, 988 F.2d at 867. However, the "holdings" that have been placed in doubt are not the specific findings that the surety company and developer were not ERISA "employers," but rather those cases' narrow view of ERISA preemption--a different issue entirely. Thus, the specific holdings of D & L Camp and Majestic Housing upon which we rely remain valid
 
 
 [9]
 The California courts have implied that a general contractor may avoid any liability to suppliers of labor or materials by issuing joint checks naming both the subcontractor and the supplier as payees. See Post Bros. Constr. Co. v. Yoder, 20 Cal.3d 1, 141 Cal.Rptr. 28, 30, 32, 569 P.2d 133, 135, 137 (1977)
 
 
 [10]
 See n. 9 supra
 
 
 [11]
 The Trust Funds contend that the collective bargaining agreement between Stark and the carpenters' union can furnish the grounds for Sec. 301 jurisdiction. However, any Mark liability to the Trust Funds would have to arise from the Mark/Stark subcontract, or from an alleged agreement among Mark, Stark, and the Trust Funds--not from the collective bargaining agreement (although the amount of liability would have to be determined by the terms of the agreement). Therefore, resolution of the claim would not be "focused upon" the collective bargaining agreement, and Sec. 301 jurisdiction may not be based on it. See Majestic Housing, 743 F.2d at 1345
 
 
 [12]
 At least two of our prior decisions imply that Sec. 301 jurisdiction lies only for disputes arising out the terms of a collective bargaining agreement. See Lumber Prod. Indus. Workers Local No. 1054 v. West Coast Indus. Relations Ass'n, 775 F.2d 1042, 1046 (9th Cir.1985) ("the rights and liabilities of the parties to an action under section 301(a) must be a product of the bargaining agreement itself, and not of some other origin."); Williams v. Caterpillar Tractor Co., 786 F.2d 928, 935 (9th Cir.1986) (same), aff'd, 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). These decisions appear to rely erroneously on our decision in Majestic Housing, where we held that Sec. 301(a) jurisdiction did not lie because the appellee's rights and liabilities were entirely of statutory origin and did not arise from the collective bargaining agreement. Majestic Housing, 743 F.2d at 1345
 
 
 [13]
 The complaint does not elaborate on the nature of the alleged "understanding," such as when and how it came to be, what form it took, and the duties that the parties assumed under it
 
 
 [14]
 We note that Marjo, which controls our preemption holdings, was not decided until March 16, 1993, long after the Trust Funds filed their appeal
 
 
 [15]
 This section provides that
 [i]n any action under this subchapter ... the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.
 29 U.S.C. Sec. 1132(g)(1) (1988).
 
 
 [1]
 Section 515 provides:
 Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms of the collective bargaining agreement.
 29 U.S.C. Sec. 1145.